**Matthew S. Parmet** (AZ Bar # 037945)
matt@parmet.law
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5228

**Andrew R. Frisch** (*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
8151 Peters Rd., 4th Floor
Plantation, FL 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
Email: AFrisch@forthepeople.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Daren Hull, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>The Goodyear Tire & Rubber Company,<br><br>Defendant. | Case No. _____<br>FLSA Collective Action<br><br>**Plaintiff's Original Collective Action Complaint for Damages**<br><br><br>Jury Trial Demanded |

## SUMMARY

1. Like many other organizations across the United States, The Goodyear Tire & Rubber Company's ("Goodyear") Kronos-based timekeeping and payroll systems were affected by a service outage beginning in December 2021.

2. That outage led to problems in timekeeping and payroll throughout Goodyear's organization.

3. As a result, Goodyear's workers who were not exempt from overtime under federal law were not paid for all overtime hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours during and after the onset of the Kronos outage.

4. Daren Hull is one such Goodyear worker.

5. Goodyear's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

6. Hull worked for Goodyear during the Kronos outage and was affected by these pay practices—just like Goodyear's other non-exempt workers.

7. This action seeks to recover the unpaid wages and other damages owed by Goodyear to all these workers, along with the other remedies provided by federal law.

### JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

10. Hull worked for Goodyear in this District.

### PARTIES

11. **Plaintiff Daren Hull** is a natural person.

12. Hull was, at all relevant times, an employee of Goodyear.

13. Hull worked for Goodyear during the Kronos outage.

14. Hull worked for Goodyear from August 2019 to July 2023.

15. Hull worked for Goodyear in Arizona.

16. Hull represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Goodyear who worked in the United States at any time during Goodyear's Kronos service outage, beginning on or about December 11, 2021, until the time that Goodyear regained full access to all Kronos products and services, <u>and</u> resumed normal employee timekeeping and payment operations.**

17. Throughout this Complaint, the FLSA Collective members are also referred as the "Similarly Situated Workers."

18. **Defendant The Goodyear Tire & Rubber Company** ("Goodyear") is a foreign corporation.

19. Goodyear does business in a systematic and continuous manner throughout Arizona.

20. Goodyear may be served by service upon its registered agent, **Corporation Service System, 8825 N. 23rd Ave., Ste. 100, Phoenix, AZ 85021**, or by any other method allowed by law.

### FLSA COVERAGE

21. At all relevant times, Goodyear was an employer of Hull within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. At all relevant times, Goodyear was and is an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. Goodyear was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24. During at least the last three years, Goodyear has had gross annual sales in excess of $500,000.

25. Goodyear was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

26. Goodyear employs many workers, including Hull, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

27. The goods and materials handled, sold, or otherwise worked on by Hull and other Goodyear employees and that have been moved in interstate commerce include, but are not limited to, office supplies, computers, telephones, prescription and non-prescription medical supplies and equipment, and pharmaceuticals.

## FACTS

28. Goodyear is a healthcare system operating in and around Phoenix.

29. Many of Goodyear's employees are non-exempt workers.

30. Since at least 2021, Goodyear has used timekeeping software and hardware operated and maintained by Kronos.

31. On or about December 11, 2021, Kronos suffered a disruption in service due to a ransomware attack.

32. The Kronos outage interfered with the ability of its customers, including Goodyear, to use Kronos to track hours and pay employees.

33. For at least a portion of time following the Kronos outage, Goodyear failed to keep accurate track of the hours that Hull and Similarly Situated Workers worked.

34. For at least a portion of time following the Kronos outage, Goodyear failed to correctly pay Hull and Similarly Situated Workers for the hours that it did track, or for hours that were not tracked.

35. Instead, Goodyear used various methods to estimate the number of hours Hull and Similarly Situated Workers have worked in each pay period.

36. As a result of Goodyear's failure to accurately track the actual hours worked each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

37. Many employees were not paid for all their non-overtime wages for hours worked in certain workweeks.

38. Hull is one of the many Goodyear employees affected by these pay and timekeeping practices.

39. Hull regularly worked over 40 hours per week for Goodyear.

40. Hull worked 40 hours, or more, for Goodyear during the Kronos outage.

41. But Hull was not paid the proper overtime premium for all hours worked on time, if at all, for each of those weeks after the onset of the Kronos service disruption, on or about December 11, 2021.

42. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

43. Goodyear knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

44. Goodyear knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

45. Goodyear could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

46. But Goodyear did not accurately track time and fully and timely pay employees for the time they worked, including overtime hours, and at the regular rates at which they were supposed to be paid.

47. It was feasible for Goodyear to put in timekeeping and pay systems during the Kronos outage so that employees could be timely paid the full and correct amounts of money they were owed for the work they did for the company.

48. But Goodyear failed to put a competent system in place to ensure that happened.

49. In other words, Goodyear pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than taking steps to make sure its employees were paid on time and in full for the work they did.

50. An employer cannot set up inefficient timekeeping and payroll systems and then claim it is not responsible for the timely payment of wages. Cahill v. City of New Brunswick, 99 F.Supp.2d 464, 475 (D.N.J. 2000).

51. Yet, in the wake of the Kronos outage, that is exactly what Goodyear did.

52. Hull is just one of the many front-line employees who had to shoulder the burden of this decision by Goodyear.

53. Hull is just one of the many Goodyear employees who had to shoulder the burden of Goodyear's timekeeping and payroll policies and practices.

54. Hull was a non-exempt hourly employee of Goodyear.

55. Hull regularly worked over 40 hours per week for Goodyear.

56. Hull's normal, pre-Kronos outage hours are reflected in Goodyear's records.

57. Hull regularly worked over 40 hours per week for Goodyear during payroll cycles affected by the Kronos outage.

58. In payroll cycles affected by the Kronos outage, Goodyear did not timely pay Hull and Similarly Situated Workers for their actual hours worked each week.

59. In payroll cycles affected by the Kronos outage, Goodyear did not accurately record the hours worked by Hull and Similarly Situated Workers, in multiple workweeks.

60. Goodyear was aware of the overtime requirements of the FLSA.

61. Goodyear nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Hull.

62. Goodyear nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Hull.

63. Goodyear's failure to pay overtime to these non-exempt workers constitutes a willful violation of the FLSA.

64. The full overtime wages owed to Hull and the Similarly Situated Workers became "unpaid" when the work for Goodyear was done—that is, on Hull and the Similarly Situated Workers' regular paydays. *See, e.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), modified, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

65. At the time Goodyear failed to pay Hull and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Goodyear became liable for all liquidated damages and any other damages owed under federal law.

66. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

67. Any payment made by Goodyear to Hull or the Similarly Situated Workers that Goodyear may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

68. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

69. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Goodyear's acts and omissions resulting in the unpaid wages in the first place.

70. Hull and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by Goodyear under federal law.

### COLLECTIVE ACTION ALLEGATIONS

71. Numerous individuals were victimized by Goodyear's patterns, practices, and policies, which are in willful violation of the FLSA.

72. Based on her experience and tenure with Goodyear, Hull is aware that Goodyear's illegal practices were imposed on the FLSA Collective.

73. The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

74. These employees are victims of Goodyear's respective unlawful compensation practices and are similarly situated to Hull in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

75. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

76. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

77. Goodyear's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

78. The FLSA Collective members should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CAUSE OF ACTION—VIOLATIONS OF THE FLSA

79. Hull incorporates each other allegation.

80. By failing to pay Hull and the FLSA Collective members overtime at 1.5x their regular rates, on time and in full, Goodyear violated the FLSA. 29 U.S.C. § 207(a).

81. Goodyear owes Hull and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

82. Goodyear owes Hull and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

83. Likewise, Goodyear owes Hull and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 778.315.

84. Goodyear knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Hull and the Collective members the compensation owed to them under the FLSA.

85. Because Goodyear knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Goodyear owes these wages for at least the past three years.

86. Goodyear's failure to pay compensation owed under the FLSA to Hull and the Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

87. Because Goodyear's decision not to pay overtime was not made in good faith, Goodyear also owes Hull and the Collective members an amount equal to the unpaid wages as liquidated damages.

88. Accordingly, Hull and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including their agreed-upon wages up to 40 hours each week they worked overtime and overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

## RELIEF SOUGHT

Hull prays for judgment against Goodyear as follows:

    a. For an order certifying a collective action for the FLSA claims;

    b. For an order finding Goodyear liable for violations of federal wage laws with respect to Hull and the FLSA Collective members;

    c. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Hull and the FLSA Collective members;

    d. For a judgment awarding attorneys' fees to Hull and the FLSA Collective members;

    e. For a judgment awarding costs of this action to Hull and the FLSA Collective members;

    f. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Hull and the FLSA Collective members; and

g.  For all such other and further relief as may be necessary and appropriate.

Date: <u>Aug. 1, 2023</u>

Respectfully submitted,

By: */s/ Matthew S. Parmet*
_____
**Matthew S. Parmet**
**PARMET PC**

**Andrew R. Frisch**
**MORGAN & MORGAN, P.A.**

**Attorneys for Plaintiff**

## JURY DEMAND

Plaintiff Daren Hull demands a trial by jury on all issues.

*/s/ Matthew S. Parmet*
_____
**Matthew S. Parmet**